1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8   KENNETH W. TUNCH,

9                            Plaintiff,                Case No. 3:16-CV-05173-TSZ-BAT

10              v.                                     **REPORT AND**
                                                      **RECOMMENDATION**
11  CAROLYN W. COLVIN, Acting Commissioner
    of Social Security,
12
                             Defendant.
13

14          Kenneth W. Tunch seeks review of the redetermination and cessation of his entitlement

15  to his Disability Insurance Benefits.  He contends the ALJ erred in finding he was no longer

16  disabled and entitled to benefits after December 13, 2012, because the finding was based on an

17  erroneous adverse credibility determination and because the ALJ's conclusion that he medically

18  improved and no longer had severe, medically determinable mental impairments was contrary to

19  his medical record.  Dkt. 12.  As discussed below, the Court recommends the case be

20  **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of

21  42 U.S.C. § 405(g).

22                                  **BACKGROUND**

23          In September 2002, Mr. Tunch was found entitled to a period of disability beginning

October 31, 1997 and to Disability Insurance Benefits under Title II of the Social Security Act. Tr. 66.  Specifically, the ALJ concluded Mr. Tunch had not engaged in any substantial gainful activity since October 31, 1997; he had severe impairments of bipolar disorder, status post-cervical fusion, and left hand tendon injury; and his impairments met the criteria for Listing 12.04. Tr. 62-66.  In November 2012, the Social Security Agency's ("SSA") Cooperative Disability Investigation Unit (CDIU) completed an investigation of Mr. Tunch after the Disability Determination Services office "found inconsistencies in [his] allegations and presentations throughout the file." Tr. 615.  The SSA subsequently ceased Mr. Tunch's benefits as of December 13, 2012. Tr. 73-74, 85-87.  Mr. Tunch requested reconsideration but the determination was upheld in July 2013. Tr. 22.  ALJ Gary Elliott conducted a hearing on September 11, 2014. *See id.*  In a decision dated November 5, 2014, the ALJ concluded Mr. Tunch's entitlement to disability benefits ended on December 13, 2012. Tr. 22-30.

In concluding Mr. Tunch was no longer entitled to benefits, the ALJ applied an eight-step sequential evaluation process. *See* 20 C.F.R. § 404.1594(f).  At step one, the ALJ evaluated whether Mr. Tunch was engaged in substantial gainful activity, and determined he was not.  Tr. 23 (citing 20 C.F.R. § 404.1594(f)(1)).  At step two, the ALJ assessed whether Mr. Tunch had an impairment or combination of impairments that met or equaled the severity of a listed impairment.  Tr. 22; *see also* 20 C.F.R. § 404.1594(f)(2).  The ALJ found Mr. Tunch has severe, medically determinable impairments of status-post cervical fusion, hypertension, and status-post left hand injury, but that these impairments do not meet or medically equal the severity of a listed impairment.  Tr. 24-25.  The ALJ did not find Mr. Tunch has any severe mental impairment.  *See id.*  At step three, the ALJ evaluated whether medical improvement had occurred, resulting in a decrease in the severity of Mr. Tunch's impairments, and determined Mr. Tunch medically

1   improved as of December 13, 2012.  Tr. 25; *see also* 20 C.F.R. § 404.1594(f)(3).  The ALJ

2   determined at step four that Mr. Tunch's medical improvement is related to the ability to work.

3   Tr. 26; *see also* 20 C.F.R. § 404.1594(f)(4).  This finding prompted the ALJ to continue to step

4   six[1] to determine whether Mr. Tunch's impairments, in combination, are severe.  20 C.F.R. §

5   404.1594(f)(6).  Here, the ALJ found Mr. Tunch's medically determinable *physical* impairments

6   are severe.  Tr. 26.  At step seven, the ALJ found Mr. Tunch has the RFC to perform the full

7   range of medium work.  Tr. 27; *see also* 20 C.F.R. § 404.1594(f)(7).  At step eight, the ALJ

8   found Mr. Tunch had no past relevant work, but that jobs exist in significant numbers in the

9   national economy that he can perform.  Tr. 29; *see also* 20 C.F.R. § 404.1594(f)(8).  As the

10   Appeals Council denied Mr. Tunch's request for review, the ALJ's November 5, 2014 decision

11   is the Commissioner's final decision.  Tr. 1-7.

12   **DISCUSSION**

13   **A.     The ALJ Did Not Err in Issuing an Adverse Credibility Determination**

14          At steps two and three of the sequential evaluation process, the ALJ found that, based on

15   a preponderance of the evidence, "fraud or similar fault," as that term is used in 42 U.S.C. §

16   405(u), 20 C.F.R. § 416.929, and SSR 00-2p, was involved in Mr. Tunch's statements at his

17   hearing and to providers.[2]  Tr. 24-26.  Pursuant to 42 U.S.C. § 405(u)(1)(B), "the Commissioner

18   _____

19   [1] 20 C.F.R. § 404.1594(f)(4) directs the Commissioner to continue to step 6 if medical
improvement is related to the claimant's ability to work.

20   [2] 42 U.S.C. § 405(u) governs the redetermination of entitlement to benefits and provides in
relevant part:  The Commissioner of Social Security shall immediately redetermine the
entitlement of individuals to monthly insurance benefits under this subchapter if there is reason

21   to believe that fraud or similar fault was involved in the application of the individual for such
benefits.  42 U.S.C. § 405(u)(1)(A).  "Similar fault" may be found where "(A) an incorrect or

22   incomplete statement that is material to the determination is knowingly made; or (B) information
that is material to the determination is knowingly concealed."  *Id*. at § 405(u)(2)(A), (B).  The

23   ALJ found that Mr. Tunch's statements "involved material matters before the undersigned and
that the claimant knew the evidence provided was false or incomplete at the time the claimant

of Social Security shall disregard any evidence if there is reason to believe that fraud or similar

fault was involved in the providing of such evidence."  The ALJ thus disregarded "all [Mr.

Tunch's] subjective statements in [his disability application], [his] statements made for the

benefit of evaluation or treatment, and [his] testimony at hearing."  *Id.* at 25.

Mr. Tunch argues the ALJ must provide clear and convincing reasons for discounting his

credibility because "none of the evidence cited by the ALJ provides [Mr. Tunch] was

malingering."  Dkt. 12 at 14; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

("Where . . . there is no evidence of malingering, an ALJ must provide clear and convincing

reasons to reject a claimant's testimony.").  Mr. Tunch further contends the ALJ failed to provide

clear and convincing reasons to reject his credibility because, as the Court understands the

argument, the ALJ's credibility determination is unsupported by fact.  *See* Dkt. 12 at 12-16.  Mr.

Tunch does not specifically challenge the ALJ's fraud or similar fault assessment; nevertheless,

that assessment and the ALJ's adverse credibility determination are inextricably linked.[3]  The

Court therefore approaches this issue as it would an adverse credibility determination, and finds

that, even in the absence of a specific finding of malingering, the ALJ provided clear and

convincing reasons for disregarding Mr. Tunch's credibility.

The ALJ first cited the November 29, 2012 CDIU report which showed that Mr. Tunch

"was capable and currently performing significant activities inconsistent with the degree of

limitation claimed," and that he was "active in performing church duties, managing church

finances, interacting with others, cooking, driving, and shopping."  Tr. 26 (citing 614-32).  Mr.

---

provided the evidence."  Tr. 25.

[3] In assessing Mr. Tunch's RFC, the ALJ stated:  "For the reasons discussed throughout this
decision, the claimant's subjective complaints of limitation are excluded, because fraud or
similar fault was involved in the claimant's statements. . . . the claimant's statements concerning
the intensity, persistence and limiting effects of [his] symptoms are not credible."  Tr. 27.

Tunch contends this evidence is not convincing because he testified he was never a pastor of a church, all members of his church consider themselves ministers, the church only had about eight members, and he attends Bible study once per week but does not act as group leader.  Dkt. 12 at 14.  The arguments are not persuasive, particularly because Mr. Tunch cites only his own testimony and no other portion of the medical record.  In weighing a claimant's credibility, an ALJ may consider inconsistencies either in the claimant's testimony or between his testimony and his conduct, and his daily activities.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The report also indicated Mr. Tunch could "move without difficulty, walk briskly without impairment, carry his young son, load his car with groceries, and move furniture," contrary to Mr. Tunch's allegations he could lift no more than 10 pounds.  Tr. 26 (citing Tr. 617).  Mr. Tunch does not address the ALJ's findings regarding inconsistencies in his physical limitations.  The ALJ's reasons were thus clear and convincing.

The ALJ also noted that, though Mr. Tunch alleged on the one hand that he had an 11th grade education, he also represented to the Veterans Administration that he earned a GED in 2011 and degrees in Ministry, Applied Technology, and Business Administration.  Tr. 26 (citing Tr. 306).  Mr. Tunch correctly observes that the report the ALJ cited regarding his 11th grade education makes no such reference.  Dkt. 12 at 14.  The Court thus agrees this reasoning was neither clear nor convincing.

The ALJ also found that official records filed with the Secretary of State indicating Mr. Tunch was the president, 55% owner, director, and registered agent for a church he founded in 2006, were inconsistent with claims he was only minimally involved with volunteer church activities.  Tr. 26 (citing 199-203).  Mr. Tunch contends his name was entered on paperwork without his knowledge or consent.  Dkt. 12 at 14 (citing Tr. 50).  The Court concludes it was not

unreasonable for the ALJ to rely on official state filings to question Mr. Tunch's credibility or to find he was engaged in activities suggesting he no longer had impairments consistent with his alleged mental health impairments.

Finally, the ALJ found Mr. Tunch knowingly made statements to providers that were untrue and designed to mislead.  Tr. 26.  In support of this conclusion, the ALJ cited a medical record wherein Mr. Tunch expressed disapproval of the provider's use of the word "serious" instead of "severe" in describing his limitations for the purpose of his SSI reevaluation.  Tr. 797. The provider agreed to "write a second letter that will hopefully more fully reflect this veteran's request."  *Id.*  The ALJ also found that Mr. Tunch erroneously informed his provider that "both Veterans Administration and the Social Security Administration categorized him as 'disabled,'" which the ALJ found was a knowingly false statement because Mr. Tunch was up for review of his social security benefits.  Tr. 26.  Additionally, the ALJ observed the provider "previously refused to provide [Mr. Tunch] with a letter opinion that the claimant was unable to work secondary to mental health impairments."  Tr. 26.  This particular finding is not supported by the record:  in reality, the provider stated he could not speak to the question of disability because that determination was "not within the scope of my practice within VA."  Tr. 816.  Nevertheless, the Court is satisfied that Mr. Tunch's report to his provider that he was viewed as having a disability by the SSA was misleading, and it was therefore not unreasonable for the ALJ to question his reputation for truthfulness.  *See Light*, 119 F.3d at 792.

Mr. Tunch also argues he never received a gift or payment from the church, and his earning records reflect that an erroneous credit for earned income of $50,000 was removed.  Dkt. 12 at 14 (citing Tr. 184).  The argument is also unpersuasive.  Though it is true the CDIU report stated Mr. Tunch received a $50,000 payment for "services in kind" in 2009, Tr. 615, the ALJ

1   did not cite this payment or even paid work as a basis for discounting his credibility and

2   concluding he had medically improved.  *See* Tr. 25-26.

3          In summary, Mr. Tunch has failed to establish the ALJ provided no valid reasons to

4   discount his credibility.  The Court thus recommends affirming the ALJ.  *See Carmickle v.*

5   *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason

6   among other reasons to discount a claimant's credibility is at most harmless error if the other

7   reasons are supported by substantial evidence and the erroneous reason does not negate the

8   validity of the overall credibility determination).

9   **B.    The ALJ's Step Three Finding Did Not Consider Mr. Randolph's Evaluations**

10         Mr. Tunch also contends the ALJ erred in finding he medically improved and no longer

11  has severe, mentally determinable impairments as of December 13, 2013.  Dkt. 12 at 2-12.  He

12  argues the conclusion is contrary to his medical record.  *Id.*  In support of his argument, Mr.

13  Tunch discusses a number of medical opinions pre-dating his disability termination date.  The

14  ALJ gave "little weight" to the opinions dated before December 13, 2012 because they did not

15  discuss the "period at issue," which the ALJ characterized as the period between that date (the

16  date Mr. Tunch's entitlement to benefits came under scrutiny), and the date of the ALJ's

17  decision.  Tr. 27.  Mr. Tunch does not address the ALJ's rejection of these opinions as irrelevant

18  to the period at issue.  Rather, he contends the ALJ erred because the step-two inquiry is a de

19  minimus screening device to dispose of groundless claims, and an impairment can only be found

20  "not severe" if the evidence establishes a slight abnormality that has no more than a minimal

21  effect on the individual's ability to work.  Dkt. 12 at 8; *see also Smolen v. Chater*, 80 F.3d 1273,

22  1290 (9th Cir. 1996).  Mr. Tunch's arguments reveal he misunderstands the context of the ALJ's

23  decision.  Disability reviews for determining a continued, rather than initial, entitlement to

benefits are governed by the eight-step evaluation process described in 20 C.F.R. § 404.1594(f),

and not the five-step evaluation process enumerated in 20 C.F.R. § 404.1520.  *Cf.* §

404.1520(a)(5) ("If you are already receiving disability benefits, we will use a different

sequential evaluation process to decide whether you continue to be disabled.  We explain this

process in § 404.1594(f).").  At step three of this eight-step process, the ALJ must determine if

medical improvement has occurred which results in a decrease in the medical severity of the

claimant's impairments.  *See* 20 C.F.R. § 404.1594(f)(3).  At this step, the ALJ found Mr. Tunch

no longer had any medically determinable mental health impairments.  Tr. 25.  Mr. Tunch does

not explain how his analysis — centered upon step two of the five-step *initial* disability

evaluation process — applies in a disability *review* case.  In the absence of a clearly applicable

argument, the Court declines to find the ALJ erred in disregarding opinion evidence rendered

before the date his benefits were terminated.[4]

The ALJ also stated he gave no weight to opinions during the period at issue that relied

exclusively on Mr. Tunch's subjective complaints, and instead, considered only evidence based

on "objective, verifiable findings."  *Id.* (citing Exs. 13F, 14F, 19F, 20F, 21F, 24F, 25F, 26F).

Mr. Tunch also discussed medical evidence post-dating December 13, 2012, but failed to address

the ALJ's assignment of no weight to the opinions that relied exclusively on his subjective

complaints.  The Court thus finds Mr. Tunch's argument largely unpersuasive,[5] with the

exception of several records dated after December 13, 2012 that did not rely exclusively on Mr.

---

[4] Arguments that are unsupported by explanation may be deemed to be waived.  *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (*citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).

[5] Mr. Tunch cites other records post-dating December 13, 2013, including group therapy progress notes and treatment notes with Dr. Clemens and Dr. Lim.  Dkt. 12 at 6-8.  But nothing in these notes suggest medical opinions were rendered based on objective findings, rather than self-reports and subjective complaints.

REPORT AND RECOMMENDATION - 8

1    Tunch's subjective complaints and that were not explicitly discussed by the ALJ.  Treating

2    provider Dwight Randolph, LMHC, completed a Psychiatric/Psychological Impairment

3    Questionnaire in May 2014, and diagnosed depressive disorder, PTSD, and bipolar disorder.  Tr.

4    1014-22.  The provider indicated the diagnoses were based on OASIS, a modified structured

5    clinical interview for DSM-IV PTSD, the Beck Depression Inventory, and the Burns Anxiety

6    Scale.  Tr. 1016; *see also* Tr. 697-700 (February 12, 2013 evaluation); 744-747 (February 1,

7    2013 evaluation).  Because Dr. Randolph's opinions were not formed purely on Mr. Tunch's

8    subjective complaints, the ALJ should have explained why the evidence was rejected.  *Vincent v.*

9    *Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  The ALJ failed to do so.  Thus, on remand, Mr.

10   Randolph's opinions dated after December 13, 2012, should be evaluated and discussed in the

11   ALJ's decision.

12                                              **CONCLUSION**

13           For the foregoing reasons, the Court recommends that the Commissioner's decision be

14   **REVERSED** and the case be **REMANDED** for further administrative proceedings under

15   sentence four of 42 U.S.C. § 405(g).

16           On remand, the ALJ should evaluate and discuss Dr. Randolph's opinions post-dating

17   December 13, 2012.

18           A proposed order accompanies this Report and Recommendation.  Any objection to this

19   Report and Recommendation must be filed and served no later than **September 2, 2016**.  If no

20   objections are filed, the Clerk shall note the matter for September 6, 2016 as ready for the

21   Court's consideration.  If objections are filed, any response is due within 14 days after being

22   served with the objections.  A party filing an objection must note the matter for the Court's

23   consideration 14 days from the date the objection is filed and served.  Objections and responses

REPORT AND RECOMMENDATION - 9

1   shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

2          DATED this 19th day of August, 2016.

3

4

5          _____
           BRIAN A. TSUCHIDA
6          United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 10